IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | |
|---|---|
| AARON LEE JONES, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
|     v. ) | 2:06cv986-MHT |
| ) | (WO) |
| RICHARD ALLEN, ) | |
| Commissioner, Alabama ) | |
| Department of Corrections, ) | |
| in his individual and ) | |
| official capacities, and ) | |
| GRANTT CULLIVER, Warden, ) | |
| Holman Correctional ) | |
| Facility, in his individual ) | |
| and official capacities, ) | |
| ) | |
|     Defendants. ) | |


OPINION

Plaintiff Aaron Lee Jones is scheduled to be executed

by the State of Alabama on May 3, 2007.  Pursuant to 42

U.S.C. § 1983, Jones has filed this civil action claiming

that the method and procedure the State intends to use to

execute him pose an unjustifiable risk of causing him

extreme pain in violation of the Eighth and Fourteenth

Amendments to the Constitution.  He names the Commissioner of the Alabama Department of Corrections and the Warden of Holman Prison as defendants.  Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343.  There are currently two motions pending: the defendants' motion for summary judgment on the ground of statute-of-limitations, and Jones's motion for a stay of execution.  For the reasons that follow, both motions will be denied.


## I. BACKGROUND

Jones is a death-row inmate in the custody of the Alabama Department of Corrections.  The facts underlying his capital offense are detailed in the Eleventh Circuit's opinion denying him habeas relief.  <u>Jones v. Campbell</u>, 436 F.3d 1285, 1289-92 (11th Cir. 2006), <u>cert. denied</u> <u>sub nom.</u> <u>Jones v. Allen</u>, ___ U.S. ___, 127 S. Ct. 619 (2006) (mem.).  On November 10, 1978, Jones and another person were responsible for shooting and stabbing three children, their parents, and their grandmother in

2

Blount County, Alabama.  The parents, Willene and Carl Nelson, died as a result of the attacks.  The following is a chronology giving rise to the issues before the court:

### A.  State-Court Direct Proceedings

1979: An Alabama jury found Jones guilty of capital murder and recommended that he be sentenced to death. The trial court agreed with the jury and sentenced him to death by electrocution.

1982: Jones was retried for his offense after the Alabama Court of Criminal Appeals, pursuant to Beck v. Alabama, 447 U.S. 625 (1980), reversed and ordered a new trial.  Jones v. State, 403 So.2d 1 (Ala. Crim. App. 1981).  An Alabama jury again found him guilty of capital murder, and the trial court again sentenced him to death.

January 10, 1984: The Alabama Court of Criminal Appeals affirmed Jones's conviction and death sentence.

<u>Jones v. State</u>, 520 So.2d 543, 545 (Ala. Crim. App. 1984).

January 8, 1988: The Alabama Supreme Court affirmed the decision of the Alabama Court of Criminal Appeals. <u>Ex parte Jones</u>, 520 So.2d 553 (Ala. 1988).

October 3, 1988: The United States Supreme Court denied certiorari review. <u>Jones v. Alabama</u>, 488 U.S. 871 (1988) (mem.).

## B. <u>State-Court Collateral Proceedings</u>

March 1990: Jones filed a petition for post-conviction relief, challenging his conviction and sentence pursuant to Ala. R. Crim. P. 32.

May 1994: Jones amended his Rule 32 petition, reiterating claims alleged in his original petition, and raising numerous other claims for relief.

June 1996: The state trial court denied post-conviction relief to Jones.

April 30, 1999:   The Alabama Court of Criminal Appeals affirmed the trial court's June 1996 order. <u>Jones v. State</u>, 753 So.2d 1174 (Ala. Crim. App. 1999).

December 17, 1999: The Alabama Supreme Court denied certiorari review.

## C. <u>Federal-Habeas Proceedings</u>

December 15, 2000: Jones filed a federal habeas petition pursuant to 28 U.S.C. § 2254.  Jones raised numerous claims including a method-of-execution claim that challenged Alabama's use of electrocution.

July 1, 2002: Alabama switched from electrocution to lethal injection as the primary form of execution, and gave death-row inmates 30 days to elect death by electrocution instead.  1975 Ala. Code § 15-18-82.1.

February 6, 2004: The district court denied federal habeas relief to Jones.

January 20, 2006: The Eleventh Circuit affirmed the district court's decision. <u>Jones v. Campbell</u>, 436 F.3d 1285 (11th Cir. 2006).

November 13, 2006: The United States Supreme Court denied certiorari review. <u>Jones v. Allen</u>, ___ U.S. ___, 127 S. Ct. 619 (2006) (mem.).


### D.   <u>Federal Challenge to Lethal Injection</u>

November 1, 2006: Jones filed the instant method-of-execution § 1983 suit, claiming that there is an unreasonably high risk that Alabama's current execution protocol will be carried out improperly and thereby cause him extreme pain at the moment of execution, a risk that Jones asserts is both unjustifiable and avoidable. Jones contends that if his execution is 'botched' as described, it would violate the Eighth Amendment (as incorporated against the States through the Fourteenth Amendment), which prohibits "unnecessary and wanton infliction of pain." <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976).

December 4, 2006: With federal-habeas review complete, the State filed a motion with the Alabama Supreme Court to set an execution date for Jones.

December 22, 2006: The parties filed in this court a joint report, pursuant to Fed.R.Civ.P. 26(f), setting forth proposed dates and deadlines for discovery, motions, and a trial date of October 1, 2007.

January 8, 2007: This court adopted the parties' proposed trial date of October 1, 2007.

February 26, 2007: In response to the State's December 4 motion to set a date of execution, the Alabama Supreme Court set Jones's execution date for May 3, 2007.

March 1, 2007: The defendants informed this court of the execution date, and the court ordered Jones to indicate whether he intended to seek a stay of execution.

March 2, 2007: Jones filed a statement of intent to seek a stay.

March 13, 2007: The defendants filed a motion for summary judgment, raising a statute-of-limitations defense.

March 14, 2007: Jones filed a motion to stay execution.


## II. DISCUSSION

As stated, Jones asks this court to enter a stay of execution so that his lethal-injection challenge can proceed on the merits.  The defendants offer two responses.  First, they contend that, because Jones's claim is barred by the statute of limitations, summary judgment should be entered in their favor.  Second, they argue that Jones's motion for a stay of execution should be denied because of the "strong equitable presumption against the grant of a stay where a claim could have been brought at such time to allow consideration of the merits without requiring entry of a stay."  Hill v. McDonough ("Hill I"), 547 U.S. ___, ___, 126 S. Ct. 2096, 2104

8

(2006) (quoting <u>Nelson v. Campbell</u>, 541 U.S. 637, 650 (2004)).

The court will therefore divide its discussion into two parts. First, the court will consider whether the defendants are entitled to summary judgment based on the statute-of-limitations defense, that is, whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show that there is no genuine issue as to any material fact and that the [defendants are] entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Then, the court will consider Jones's motion for a stay of execution.

### A. Motion for Summary Judgment

The court first addresses the defendants' motion for summary judgment based on their statute-of-limitations defense.[1] The statute-of-limitations defense in a case

_____

1. The motion was originally styled a "motion for (continued...)

9

such as this one strikes the court as anomolous to say the least: the defendants are essentially arguing that the statute of limitations has already run on an injury that has not yet occurred.

According to the defendants, Jones is time-barred from bringing his § 1983 claim because his claim accrued in 2002, when Alabama adopted lethal injection as its method of execution, and expired two years later, in 2004. The defendants rely primarily on <u>Cooey v. Strickland</u>, 479 F.3d 412 (6th Cir. 2007), in which the Sixth Circuit Court of Appeals held, in a 2-1 decision, that the statute of limitations for a § 1983 method-of-execution claim accrues when <u>direct</u> review of the conviction and sentence becomes final and the State has adopted its current method of execution, <u>not</u> when collateral habeas proceedings are complete, an execution

_____

1.    (...continued)
judgment on the pleadings and alternative motion for summary judgment."  In a separate order entered today, the court denied the motion for judgment on the pleadings.  Therefore, the court now considers only the motion for summary judgment.

date is set, or execution becomes imminent.  Thus, the
defendants argue, because Jones's conviction was already
final in 2002 when Alabama adopted lethal injection as
its method of execution, Jones's § 1983 lawsuit, filed in
2006 when his habeas proceedings were nearly complete, is
untimely.

As Cooey makes clear, the federal courts look to
state law to determine the limitations period for a
§ 1983 claim.  479 F.3d at 416; see Wallace v. Kato, 549
U.S. ___, 127 S. Ct. 1091, 1094 (2007).  Because a § 1983
suit is best characterized as a constitutional tort
action, federal courts borrow the state statute of
limitations for personal injury actions.  Wallace, 127 S.
Ct. at 1094; Wilson v. Garcia, 471 U.S. 261, 276-78
(1985).  Although state law determines the limitations
period, federal law governs when the statute of
limitations begins to run, or when the claim accrues.
Wallace, 127 S. Ct. at 1095.

According to the Cooey majority, federal law dictates that "accrual occurs when the plaintiff has complete and present cause of action," that is, "when the plaintiff can file suit and obtain relief." Cooey, 479 F.3d at 416 (quoting Wallace, 127 S. Ct. at 1095) (internal quotation marks and brackets omitted).  With that principle in mind, the Cooey court proceeded to determine at what point Cooey could have sought relief.  The court concluded that a § 1983 method-of-execution claim accrues at the same time the statute of limitations begins to run for federal habeas claims, see 28 U.S.C. § 2244(d)(1)(A): upon conclusion of direct review of the state-court judgment of conviction.  479 F.3d at 422.  The Cooey majority specifically rejected the district court's view that the statute of limitations accrues when execution becomes imminent, which is when all other legal challenges to the validity of a death sentence come to an end--essentially when federal habeas proceedings are complete.  Id. at 419.  In Cooey's case, because Ohio

adopted the lethal-injection method of execution after he exhausted direct review, the accrual date was adjusted to reflect the fact that Cooey could not have discovered his 'injury' until he became aware that the State intended to execute him by lethal injection.  Id. at 422.  Even after this adjustment of the accrual date to take into account Ohio's change in execution method, the court found that the statute of limitations had run before Cooey filed his § 1983 suit.  Id.  Accordingly, the court instructed the district court to dismiss Cooey's complaint as time-barred under the statute of limitations for § 1983 actions.  Id. at 424.

Judge Gilman dissented from the Cooey majority's holding, agreeing instead with the district court that the § 1983 claim accrues when habeas review is at an end. Id. at 426 (Gilman, J., dissenting).  According to the dissent, it would make little sense to require a death-row inmate to file a method-of-execution challenge when direct review is complete, as nearly all death-sentenced

13

inmates file post-conviction claims that work their way through state and federal courts for years.  <u>Id</u>. at 429. Under the majority's analysis, such an early accrual date would require the prisoner to file a § 1983 challenge long before execution is scheduled to take place.  <u>Id</u>.

Here, the defendants ask the court to adopt the <u>Cooey</u> majority's analysis and dismiss Jones's suit as barred by the statute of limitations.  Like the plaintiff in <u>Cooey</u>, Jones exhausted his direct appeals before the State adopted lethal injection as its method of execution. Therefore, the defendants argue, Jones's § 1983 claim accrued in 2002, when his sentence was converted, by operation of law, from death by electrocution to death by lethal injection.  1975 Ala. Code § 15-18-82.1(b).  As the defendants note, the statute of limitations for § 1983 actions in Alabama is two years, borrowing from the state statute for personal-injury actions.  <u>Lufkin v. McCallum</u>, 956 F.2d 1104, 1106 (11th Cir. 1992). Therefore, according to the defendants, the statute of

14

limitations expired on Jones's § 1983 claim in 2004, two years before he brought the instant suit.

Jones argues that the court should deny the defendants' motion, both because Cooey is wrong as a matter of law and because this case is distinguishable on the facts. As to Cooey's legal conclusion, Jones argues that the view expressed in the dissent and by the district court, that the claim accrues when habeas proceedings come to an end and execution is imminent, is the correct one. As to the facts, Jones argues that, because Alabama does not publicly disclose its execution protocol, Jones did not have reason to know of his claim at the time Alabama began using lethal injection. Jones also argues that the defendants may have made material changes to the execution protocol since its inception in 2002, which would cause the claim to re-accrue and the statute-of-limitations clock to reset.[2]

_____

2. The defendants have disclosed the most recent revision to the execution protocol, which does not contain any changes that materially affect Jones's claim. (continued...)

The court must now decide whether to dismiss Jones's claim as barred by the statute of limitations. Having reviewed the Cooey decision along with the briefs in this case, the court concludes that the statute of limitations does not operate to bar Jones's claim and that the defendants' motion is therefore due to be denied. The court reaches this conclusion not on the basis of factual distinctions between this case and Cooey; instead, the court respectfully disagrees with the Cooey majority that the statute of limitations applies to a case such as this one.

As the court explains in more detail below, the Cooey majority (and the defendants in this case) made two

---

2. (...continued)
However, the defendants have also admitted that earlier revisions to the protocol were made as well but that after diligent search they are unable to locate the version of the protocol that existed before such changes were made. Theoretically, if a material component of Jones's claim arises from a part of the execution procedure that was not part of the protocol from its inception but was initiated within two years of Jones filing his complaint, then even under the Cooey framework Jones's claim would not be barred on statute-of-limitations grounds.

errors in their statute-of-limitations analysis. First, they based their analysis on the model of a § 1983 lawsuit seeking damages for a constitutional violation that took place in the past; whereas a method-of-execution lawsuit seeks injunctive relief for an allegedly unconstitutional act that has not yet occurred. Second, the interests they identified that might lead a court to conclude that a late-filing plaintiff's suit should be time-barred are not the sorts of interests that bear on a statute-of-limitations defense; rather, they are <u>equitable</u> interests that should be considered along with Jones's motion for a stay of execution.

At the outset, the court notes that <u>Cooey</u> remains unsettled law. <u>Cooey</u> is apparently the first and only published decision on when a method-of-execution claim brought under 42 U.S.C. § 1983 accrues for statute-of-limitations purposes. It was decided by a split panel of the Sixth Circuit on March 2, 2007, and a petition for rehearing and suggestion for rehearing <u>en banc</u> is pending

17

in that court.  In fact, in light of the pending petition for rehearing, the same Sixth Circuit panel that decided Cooey has also refused to lift the stay of execution on a prisoner whose claim would be barred by Cooey and has joined in the petition for rehearing.  Biros v. Strickland, No. 06-4660 (6th Cir. 2007) (unpublished order) (doc. no. 54-10).  The United States Supreme Court has also denied the State of Ohio's application to vacate that stay.  Strickland v. Biros, 549 U.S. ____, 2007 WL 831496 (Mar. 20, 2007) (mem.).  And, of course, a decision by the Sixth Circuit, while persuasive authority, is not binding in this circuit or on this court.

As to the legal merits of the majority opinion in Cooey, and the defendants' statute-of-limitations defense here, this court is of the opinion that Cooey's reliance on certain language from Wallace, 127 S.Ct. 1091, is misplaced.  Cooey cites statements from Wallace that "accrual occurs when the plaintiff has complete and

present cause of action," and "when the plaintiff can file suit and obtain relief." <u>Cooey</u>, 479 F.3d at 416 (quoting <u>Wallace</u>, 127 S.Ct. at 1095) (internal quotation marks and brackets omitted). But <u>Wallace</u> is in many ways a typical § 1983 suit: the plaintiff sued police officers for false arrest, which the court analogized for accrual purposes to the common-law tort of false imprisonment. <u>Wallace</u>, 127 S. Ct. at 1095. That is, like most § 1983 suits, the plaintiff in <u>Wallace</u> sought relief for an unconstitutionally tortious act that <u>had already occurred</u>; the question for the court was whether the § 1983 claim accrued at the moment of the arrest, when legal process began, or when the arrestee was acquitted of the underlying charged offense. <u>Id</u>. at 1095-96. By contrast, Jones's suit presents a somewhat atypical § 1983 claim: Jones is suing to prevent the State from committing an allegedly unconstitutionally tortious act <u>in the future</u>. Because a suit for injunctive relief to prevent a tortious act from occurring in the future is

19

unlike the typical suit that is predicated on a tortious act that has already occurred, the court thinks it appropriate to look beyond the language of <u>Wallace</u> that the majority quotes in <u>Cooey</u>.

This is not to say that <u>Wallace</u> should be ignored. On the contrary, <u>Wallace</u> instructs the court that "[a]spects of § 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles." <u>Wallace</u>, 127 S. Ct. at 1095. And according to the Restatement (Second) of Torts, "the statute [of limitations] does not usually begin to run until the tort is complete," and a "tort is ordinarily not complete until there has been an invasion of a legally protected interest of the plaintiff." <u>Rest. 2d Torts</u> § 899 cmt. c. See <u>Albertson v. T.J. Stevenson & Co.</u>, 749 F.2d 223, 228 (5th Cir. 1984) ("It is generally accepted that a cause of action for a tort accrues when there has been an invasion of the plaintiff's legally protected interest. Ordinarily, this

20

invasion occurs <u>at the time the tortious act is committed</u>." (emphasis added)); 51 Am.Jur.2d <u>Limitation of Actions</u> § 167 ("cause of action in tort accrues when a wrongful act causes a legal injury"); 54 C.J.S. <u>Limitations of Actions</u> § 193 ("A cause of action sounding in tort generally accrues at, and limitations begin to run from, the date on which the act causing the injury is committed...."). In fact, <u>Wallace</u> itself states: "Under the traditional rule of accrual ... the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages." 127 S. Ct. at 1097 (quoting 1 C. Corman, <u>Limitation of Actions</u> § 7.4.1, at 526-27 (1991)).

Thus, in a case where the plaintiff seeks an injunction pursuant to 42 U.S.C. § 1983 to prevent an unconstitutionally tortious act from occurring in the future, such a claim cannot be barred by the statute of

limitations because the tortious act has not yet occurred and the tort is not yet complete.[3]

In Cooey, the majority reasoned that the tortious act could not mark accrual of the claim "because the death-sentenced inmate's claim would not accrue until he was executed, at which time it would also be simultaneously moot." Cooey, 479 F.3d at 418. But this statement implies, and wrongly assumes, that a plaintiff cannot bring suit before the claim accrues for statute-of-limitations purposes. Such reasoning is irreconcilable with the broad equitable powers of a federal court under

---

3.    This type of "future harm" situation must be distinguished from cases involving prior tortious acts that give rise to future harms, either latent harms or discernible harms the extent or severity of which are not yet known. In the case of a latent harm, the statute of limitations is generally tolled until the date the plaintiff discovers or should have discovered the harm and its cause. See Albertson, 749 F.2d at 229. In the case of a discernible harm the extent or severity of which is not yet known, the statute of limitations is not tolled. Id. But in both cases, the tortious act has already occurred. Jones's case involves a different kind of 'future harm': not only will the harm manifest in the future, the tortious act itself upon which the suit is predicated will not occur until sometime in the future.

22

42 U.S.C. § 1983, which surely include the power to enjoin a defendant from committing an unconstitutional act before such act occurs where such act would cause irreparable harm. See Mitchum v. Foster, 407 U.S. 225, 242 (1972) ("Congress plainly authorized the federal courts to issue injunctions in § 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress. And this Court long ago recognized that federal injunctive relief ... can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights."). There is simply no reason why, in order for a plaintiff to seek injunctive relief to prevent a future unconstitutional harm from occurring, the statute-of-limitations clock must already be ticking.

Of course, one can always argue that the 'harm' in a case such as this one occurs when the State establishes its execution policy, sentences a capital defendant to death, or when the inmate otherwise becomes aware that

23

his death might be an unconstitutionally painful one.  In fact, at oral arguments, the defendants in this case argued that Jones's knowledge that he was to be executed constituted the 'harm' that caused his claim to accrue. But such reasoning is problematic for two reasons. First, Jones's lawsuit complains of an Eighth Amendment violation; thus, the 'harm' in Jones's case must be an unconstitutional harm.  Knowledge of a needless risk of a painful death at the hands of the State does not itself violate the Constitution; only the execution itself would.  Second, by requiring the courts to identify an event that precedes the execution as the event by which the claim accrues, the law would create a hopelessly moving target that is difficult to define non-arbitrarily: Does the claim accrue when the conviction becomes final?  At the end of habeas review?  When the execution date is set?  When (and if) the State alters its execution protocol?  There is no rhyme or reason in choosing among these options precisely because they are

**24**

little more than stand-ins for the actual tortious event the court would otherwise look for in a run-of-the-mill § 1983 case. In sum, because the execution itself is the event Jones claims would violate his constitutional rights, it defies logic, and is contrary to the common law of torts, to conclude that the statute of limitations has already run on a suit to prevent an unconstitutional act that has not yet occurred.

Similarly, the Cooey majority risks conflating accrual and ripeness. The Cooey majority cites a Fifth Circuit case, Neville v. Johnson, 440 F.3d 221, 222 (5th Cir. 2006) (per curiam), to demonstrate that it is not too early to mount a method-of-execution challenge once a conviction has become final upon completion of direct review. But this merely proves that method-of-execution claims are ripe for adjudication at such time. Whether they must be brought within two years of such time is a different question. To be sure, once a claim has accrued it is necessarily ripe; but the converse, that once a

claim is ripe it has necessarily accrued for statute-of-limitations purposes, need not follow.  Where, as here, the plaintiff challenges the constitutionality of an event that has not yet occurred, the claim may be ripe for adjudication without having accrued for statute-of-limitations purposes.

This conclusion finds support in the historical and policy reasons behind statutes of limitations.  <u>See</u> Rheingold, <u>Solving Statutes of Limitations Problems</u>, 4 Am.Jur. <u>Trials</u> 441, § 2 ("Since there is some leeway in the interpretation of the statutes and their application to new issues, the policy or purpose behind the employment of limitations, with special reference to personal injury actions, merits consideration.").  Traditionally, the purpose of a statute of limitations was to protect defendants from "stale actions," where evidence has been lost, memories have faded, witnesses have perished or are difficult to track down, and the defendants themselves have moved on with their lives in

reliance on the fact that plaintiffs have decided not to bring their claims.    See 51 Am.Jur.2d Limitation of Actions § 15 ("Protecting potential defendants from stale actions; lost evidence"); 54 C.J.S. Limitations of Actions § 2 ("Statutes of limitations ordinarily are regarded as statutes of repose whose purpose is to prevent the litigation of stale claims."). None of these policy reasons behind a statute of limitations applies to a case where the plaintiff's injury has yet to occur.[4] Nothing in this case is "stale," because the defendants are still planning on carrying out the complained-of act, and quite soon.

Traditionally, then, the farther away in time from the tortious act, the staler the claim and the greater the defendants' interest in a statute of limitations

_____

[4]. Likewise, because the plaintiff seeks injunctive relief rather than damages, the defendants need not worry about excessive demands on its state coffers arising out of occurrences in the too-distant past. Cf. Rice v. Tuscaloosa County, 4 So.2d 497, 499 (Ala. 1941) (describing policy reasons behind notice-of-claim defense for suits against municipalities).

barring it. But in this case, the defendants urge that the statute of limitations take effect as we move <u>closer</u> in time to the complained-of act. In light of the historical and policy reasons behind statutes of limitations, the defendants' approach makes little sense.

To be sure, States <u>do</u> have a "significant interest in meting out a sentence of death in a timely fashion." <u>Nelson v. Campbell</u>, 541 U.S. 637, 664 (2004). And plaintiffs' interests in pursuing their claims are severely diminished when they have slept on their rights either inexcusably or with intent to delay. <u>Delta Theatres, Inc. v. Paramount Pictures, Inc.</u>, 398 F.2d 323, 325 (5th Cir. 1968) ("No plaintiff should be permitted to sleep on his rights and harass a defendant with ... unreasonable delay.").[5] But these are <u>equitable</u> considerations that must be considered by a court that is

_____

    5. In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

asked to stay a § 1983 plaintiff's scheduled execution. Hill I, 126 S. Ct. at 2104 ("A court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" (quoting Nelson, 541 U.S. at 650)); see also McQuiddy v. Ware, 87 U.S. 14, 19 (1873) ("Equity always refuses to interfere where there has been gross laches in the prosecution of rights." (emphases added)); 30A C.J.S. Equity § 115 ("Equity aids the vigilant, not those who slumber on their rights."). These equitable considerations, moreover, are not driven by the policies underlying a statute-of-limitations defense.  See Speidel v. Henrici, 120 U.S. 377, 387 (1887) ("Independently of any statute of limitations, courts of equity uniformly decline to assist a person who has slept upon his rights, and shows no excuse for his laches in asserting them." (emphasis added)).  Thus, to the extent the defendants in this case seek to assert the

statute-of-limitations defense because Jones was dilatory in bringing his claim or because Jones's lawsuit needlessly threatens to interfere with his scheduled execution, these interests can be vindicated when the court takes up Jones's motion for a stay of execution; indeed, they should not be considered until that time.

In fact, it appears the Cooey majority's statute-of-limitations analysis is largely driven by equitable considerations. In concluding that a method-of-execution claim accrues when a prisoner's conviction becomes final on direct review, the majority reasons that a later accrual date will interfere with the "vital yet delicate balance between state and federal relations," Cooey, 479 F.3d at 419, the State's interest in timely executions, id., and Congress's intent, under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "to advance the doctrines of comity, finality, and federalism," id. at 420 (quoting Williams v. Taylor, 529 U.S. 420. 436 (2000) (brackets omitted)). But these considerations,

while legitimate, are wholly equitable in nature, and arise independent of the statute of limitations. They should be taken into consideration, and can be vindicated, when, for example, the court is called upon to enter a stay of execution so as to allow the plaintiff's § 1983 suit to proceed. These equitable considerations would also come into play in the context of a laches defense, where the court must consider such factors as the plaintiff's delay in bringing suit, whether such delay was excusable, and whether such delay prejudices the defendant. See 30A C.J.S. Equity § 131; 27A Am.Jur.2d Equity § 141; see also, e.g., Venus Lines Agency, Inc. v. CVG Int'l Am., Inc., 234 F.3d 1225, 1230 (11th Cir. 2000) ("The equitable doctrine of laches will bar a claim when three elements are present: (1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." (internal quotation marks omitted)).

31

In sum, the <u>Cooey</u> majority, and the defendants in this case, misapprehend the statute of limitations as it applies to a § 1983 case such as this one. First, they err in concluding that the statute of limitations can run on a claim that, rather than seeking relief for an unconstitutional act that has already occurred, seeks injunctive relief to prevent an irreparable constitutional violation from occurring in the future. Second, although the State has legitimate interests in carrying out timely executions and avoiding litigation where the plaintiff has indulged in inexcusable delay, those interests are not the ones that underlie a statute-of-limitations defense. Rather, they are equitable interests and in this case can be considered when deciding the plaintiff's motion for a stay of execution. It is to that inquiry that the court now turns.

## B.  Motion for Stay of Execution

"A stay of execution is an equitable remedy.  It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." Hill I, 126 S. Ct. at 2104 (quoting Nelson, 541 U.S. at 649-50).  As such, there is a "strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." Id. (quoting Nelson, 541 U.S. at 650).  That is, in order to protect the State's interest in timely enforcing its criminal judgments, a court should deny a stay where the plaintiff unreasonably delayed bringing his claim.

The Eleventh Circuit has recently addressed the strong equitable presumption inherent in stay-of-execution cases in Hill v. McDonough ("Hill II"), 464 F.3d 1256 (11th Cir. 2006) (on remand), and Rutherford v.

33

McDonough, 466 F.3d 970 (11th Cir. 2006).  In both cases the court held that the plaintiffs' delay in filing their § 1983 lethal-injection challenges precluded equitable relief.  Hill II, 464 F.3d at 1259-60; Rutherford, 466 F.3d at 973-74.  Both plaintiffs had been attacking their convictions for over 20 years and had numerous opportunities to file their challenge to lethal injection during that time.  Hill II, 464 F.3d at 1257; Rutherford, 466 F.3d at 971.  The courts found that the plaintiffs, by waiting to file their challenges until only days before their execution dates, were engaging in dilatory tactics to delay their executions.  Hill II, 464 F.3d at 1259; Rutherford, 466 F.3d at 979.

Even assuming that Jones has a claim on which he is likely to prevail, Jones was dilatory in bringing this § 1983 action.  To sum up the relevant timetable, Jones filed the instant action nearly 28 years after he was first found guilty of capital murder and sentenced to death; 25 years after he was found guilty and sentenced

34

to death a second time; nearly 19 years after his direct review ended; eight years after his collateral review ended; six years after he filed his habeas petition; and four years after the State of Alabama made lethal injection its primary method of execution.

While Jones could not have brought his claim before Alabama actually adopted lethal injection as its primary method of execution, it is still evident that Jones could have brought this action "at such time as to allow consideration of the merits without requiring entry of a stay," Hill I, 126 S. Ct. at 2104.  And this delay becomes even more egregious when viewed against the background that it has been more than 28 years since Jones committed his capital crime. In fact, in his habeas petition filed in 2000, Jones raised a similar claim challenging electrocution as Alabama's method of execution.  When Alabama switched to lethal injection in 2002, he could have then amended his habeas petition to challenge lethal injection as well.

35

Jones argues that this case is distinguishable from Hill II and Rutherford because he did not wait until the eve of his execution but rather filed this case before the Supreme Court denied certiorari on his federal habeas petition and before his execution date was even set. These differences do not warrant a different result. First, the fact remains, as stated, that Jones could have avoided this scenario by filing this lawsuit shortly after Alabama allowed lethal injection as a means of execution, and this delay is even more egregious in light of the additional fact that it has been more than 28 years since Jones committed his capital crime. Second, the mere filing of a lethal-injection lawsuit does not insulate a person, who has waited an inordinate amount of time to commence a lethal-injection challenge, from the consequences of that inordinate delay. Absent bad faith on the part of the State in setting an execution date (such as setting the date with the specific intent to defeat the lethal-injection challenge), such person runs

the risk that the date will be set during the pendency of his lethal-injection challenge.  And there is no evidence in this case that the State sought and obtained an execution date for Jones in bad faith.

Jones maintains that this case can be resolved in this court on the merits within two to three months.  The court finds such an assertion dubious.  First, if the court were to find in favor of Jones on the merits, fashioning relief (that is, reviewing the State's adoption of a new protocol for lethal injection) would take much more than three months.  Second, regardless of whether Jones prevailed or not, an appeal would be certain and would add months, if not years, to this ligation.  As result, the State would be looking at one or more years, beyond the 28 years that have already passed, before it could carry out its judgment of execution.  By waiting until November 2006 to file this lethal-injection challenge, rather than amending his federal habeas petition in 2002 to include such a claim,

Jones ran the risk that the State would set his execution during the pendency of his lethal-injection challenge.

The Nelson children, who in 1978 were not only themselves stabbed and shot, but watched their parents killed as well, are by now middle-aged.  If the court were to stay execution today, and this litigation were to proceed to its end before this court and on appeal, these children could then reasonably wonder whether Jones's sentence will be carried out in their lifetimes.

Jones also argues that, when lethal injection became the standard method of execution in Alabama, he was unaware of the risks involved.  This argument is unpersuasive in light of the numerous lethal injection challenges that have been brought as early as 2000 in some States.  See, e.g., Cooper v. Rimmer, 358 F.3d 655 (9th Cir. 2004) (rejecting an Eighth Amendment challenge to lethal-injection protocol); Harris v. Johnson, 376 F.3d 414 (5th Cir. 2004) (same); State v. Webb, 750 A.2d 448 (Conn. 2000) (same); Sims v. State, 754 So.2d 657

(Fla. 2000) (same).  Jones could have filed suit and discovered the alleged risks involved with lethal execution as a method of execution well before now.

Further evidence of Jones's delay can be found in the procedural history of this case.  On December 4, 2006, the State filed a motion asking the Alabama Supreme Court to set an execution date for Jones.  Knowing that this motion was pending in state court, Jones agreed to a Rule 26(f) report in this § 1983 action that set discovery deadlines and a trial date months away.  It was only after the State set an execution date for May 3, 2007--five months before the trial--that Jones sought to expedite matters, such as discovery in this case.  If Jones had been truly interested in litigating the issues of his claim and not merely delaying his execution, he should have asked the court to expedite matters in December so he might have had a better opportunity to litigate his case without the need for a stay of execution.  Instead, nearly three months after the State

filed its motion to set an execution date, Jones filed his motion for a stay.

In light of the circumstances outlined above, the equities do not support granting the motion for a stay and allowing Jones to delay his execution.


### III.  CONCLUSION

Because the court is unaware of any case (other than Cooey) where the statute of limitations has been used to bar injunctive relief from an injury that has not yet occurred, the defendants' motion for summary judgment will be denied.  Instead, the concerns animating the defendants' statute-of-limitations argument are in this case adequately addressed in this court's equitable determination of whether Jones's execution should be stayed so that his lethal-injection challenge can proceed on the merits.  Even if no motion to stay were pending, the defendants could still raise a laches defense; in such a case, the court would have flexible discretion to

balance the equities based on the many and varying circumstances that might be presented.  See 30A C.J.S. Equity § 131; 27A Am.Jur.2d Equity § 141).

In light of Hill I, Nelson, and their progeny, a condemned prisoner would be foolish to sit on his method-of-execution rights while pursuing habeas relief on the validity of his underlying conviction and sentence.  The debate over when a prisoner should file a method-of-execution suit is central to the equitable inquiry under Hill I and Nelson.  Therefore, while this court disagrees with Cooey that the statute of limitations is the appropriate vehicle for the State to vindicate its interest in carrying out executions in a timely manner, the equities nonetheless strongly disfavor a § 1983 plaintiff, such as Jones, who would have the court stay his execution so that he may pursue litigation he could have initiated years ago.

For the foregoing reasons, the defendants' motion for summary judgment and Jones's motion for a stay of

execution are both denied.  An appropriate judgment will

be entered.

DONE, this the 17th day of April, 2007.

___/s/ Myron H. Thompson___
UNITED STATES DISTRICT JUDGE