IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AARON LEE JONES, )| |
| )| |
| Plaintiff, )| |
| )| |
| v. )| No. 2:06-cv-986-MHT-TFM |
| )| |
| RICHARD ALLEN, et al., )| |
| )| |
| Defendants. )| |

**PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiff Aaron Lee Jones respectfully urges this Court to reexamine (i) its legal conclusion that its Judgment dated April 17, 2007 denying both Defendants' motion for summary judgment and Plaintiff's motion for stay of execution is a "final judgment" (the "Judgment"); and (ii) the factual findings and legal conclusions in its Opinion dated April 17, 2007 (the "Opinion") upon which it denied Plaintiff's motion for stay of execution.  Reconsideration under Rule 59(e) is appropriate in this matter to correct clear error or manifest injustice.  *Mitchell v. Crowell*, 975 F. Supp. 1440, 1442 (N.D. Ala. 1997).  It is also mandated by consideration of public policy.

**I.    THE JUDGMENT IS NOT A "FINAL JUDGMENT"**

The Court's determination that the Judgment is "final" is clear error and it must be amended accordingly.  The Court's denial of a motion for summary judgment is a classic interlocutory order that does not dispose of this case.  Similarly, the denial of a motion for stay does not end the case (though it is appealable under 28 U.S.C. § 1292(a)).  Yet a final judgment "*ends the litigation on the merits* and leaves nothing for the court to do but execute the

judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945) (emphasis added); *accord S.E.C. v. Carrillo*, 325 F.3d 1268, 1272 (11th Cir. 2003).

A judgment that does not address the merits of a party's claim cannot be considered a final judgment. *See* MICHAEL E. TIGAR & JANE B. TIGAR, FEDERAL APPEALS JURISDICTION AND PRACTICE § 2.02 (3rd ed. 1999) (2007 Supp.). This is a bedrock principle that prevents what would otherwise be a flood of interlocutory appeals to the Circuit Courts. Here, the Court termed its Judgment "final", but while it may in a sense be "final" as a practical matter because Plaintiff may be executed before the merits are reached, legally and conceptually the order is not final as a matter of federal appellate procedure because this Court did not reach the merits of Plaintiff's claim that Alabama's current execution protocol violates the Eighth Amendment's prohibition on cruel and unusual punishment.

For the purpose of illustration: were Mr. Jones to become incapacitated in some fashion, for example, the State could not execute him while he recovered, and the case could proceed. Granted, this may be unlikely, but it illustrates the fact that as a legal matter the case has not been resolved, and there can be no "final judgment".

The final judgment rule is followed scrupulously because it is essential to the effective functioning of the appellate courts. *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 203-204 (1999) ("the final judgment rule serves several salutary purposes . . .. [Including] 'the important purpose of promoting efficient judicial administration.'") (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)). Left unchanged, however, this Court's decision to term the judgment "final" creates a precedent that undermines the final judgment rule and these "salutary purposes". Therefore the Court should amend the Judgment to delete the word "final" or should simply enter an order, rather than a judgment.

## II. THE OPINION IGNORES THE REALITIES OF LITIGATION ON BEHALF OF DEATH-SENTENCED INMATES IN ALABAMA

The Opinion's holding that Mr. Jones was dilatory despite the fact that he filed his § 1983 method of execution claim before his federal habeas corpus remedies were exhausted and before his execution date was sought or set is manifestly unjust and in clear error.

### A. Holding that Mr. Jones Was Dilatory Is Manifestly Unjust

The Court's analysis of when a plaintiff should file a § 1983 method of execution claim cannot be reconciled with the realities of litigation on behalf of death-sentenced inmates in Alabama and invites these inmates to bring unnecessary and premature method of execution challenges simultaneously with challenges to their underlying sentences.

The Court's analysis would have Mr. Jones and other similarly situated death-sentenced inmates bring simultaneous challenges to their underlying convictions and/or sentences and their methods of execution, notwithstanding that: (i) challenging one's conviction and/or sentence and the method of execution under § 1983 are fundamentally inconsistent; (ii) a § 1983 method of execution challenge would be unnecessary if an underlying challenge to conviction and/or sentence were to succeed; (iii) execution, if it occurs at all, may not occur for years; and (iv) during such time, methods of execution (and evolving standards of decency) may well change.

Most significantly, the Opinion's failure to consider these circumstances is manifestly unjust because it ignores the realities of litigation on behalf of death-sentenced inmates including the resource constraints on *pro bono* counsel. The Eleventh Circuit has recognized there is a lack of counsel crisis for inmates sentenced to death in Alabama. *See Barbour v. Haley,* 471 F.3d 1222, 1232 (11th Cir. 2006) ("[W]e too recognize the logic in the argument that there simply are not enough volunteer lawyers willing to undertake a full review and investigation of a case in order to initiate postconviction proceedings on behalf of a death-sentenced inmate."). The

holding that Mr. Jones was dilatory in filing his § 1983 method of execution claim before his federal habeas corpus remedies were exhausted and before his execution date was set will compound this crisis. The Opinion erroneously assumes that *pro bono* counsel have unending resources and willingness to mount simultaneous challenges to the convictions of death-sentenced inmates and method of execution challenges, and this is all the more unjust when many such method of conviction challenges may end up being premature or unnecessary. Requiring inmates to litigate simultaneously both guilt and the sentence of death, on the one hand, and the method of execution, on the other, can only act to inhibit law firms from handling Alabama post conviction proceedings *pro bono*.

The Opinion also has the practical effect of encouraging any current death row inmate who is presently in any stage of state or federal post-conviction proceedings to bring a simultaneous § 1983 method of execution challenge now, even though he may never be subject to execution, the execution method may change, and so on. In this way not only does the Opinion promote unnecessary congestion of court dockets (which, in and of itself, is contrary to the interests of justice), at the same time, it risks the manifestly unjust result that scores of death-sentenced inmates whose executions are not currently imminent should be denied any right to pursue a future § 1983 action seeking a constitutional execution in Alabama because their rights on direct appeal have been exhausted and they have been on death row, in the Court's terms, too long. Indeed, based on an assessment of the status of Alabama death row inmates' legal challenges, undersigned counsel estimates that 125 out of 199 inmates currently on death row in Alabama may be barred from challenging their method of execution according to the Court's analysis without more.[1] Especially considering the fact that several states have suspended

---

[1] This analysis reflects the fact that it appears that more than two years have elapsed since the end of direct appeals by these inmates (following the adoption of lethal injection in Alabama).

executions by lethal injection and that federal courts have questioned the humaneness of lethal injection protocols *only in the last year*, the Court's analysis of the equities is manifestly unjust. *See Morales v. Tilton*, 465 F. Supp. 2d 972, 981 (N.D. Cal. 2006); *Taylor v. Crawford*, 2006 WL1779035, at *8 (W.D. Mo. June 26, 2006).

### B. Holding that Mr. Jones Was Dilatory Is Clear Error

The Court's finding that Mr. Jones was dilatory involves questions of both law and fact and is in clear error on both counts.

First, there is no factual evidence to support the conclusion that Mr. Jones is dilatory. Since his conviction, Mr. Jones has done nothing other than pursue his post-conviction rights in accordance with timelines established by the courts, and there is no evidence that Mr. Jones has ever engaged in abusive delay tactics such as attempts to file successive habeas petitions. The Court improperly speculates otherwise based on its indignation that it has taken some 28 years to adjudicate Mr. Jones' post-conviction remedies. But it is wrong to assume that the time Mr. Jones has spent on death row corresponds to unnecessary delay by Mr. Jones. For example, although Mr. Jones filed his Rule 32 petition in State Court in March 1990, the Rule 32 Court did not adjudicate the petition until June 1996 (six years later). Similarly, through no fault of Mr. Jones, the District Court sat on Mr. Jones' federal habeas petition for more than three years. The fact that the court system has taken a long time to adjudicate Mr. Jones' post-conviction remedies does not rationally translate into a factual finding that Mr. Jones has unreasonably delayed in bringing this litigation.

Nor does Mr. Jones' conduct in the prosecution of this action support such a finding. Mr. Jones commenced this action when his execution became imminent (if not even before). Since then, he has diligently pursued discovery from the State. The Court suggests that as soon as the State moved to set an execution date, but before one was in fact set, Mr. Jones should have

attempted to expedite discovery and that his failure to do so is evidence of dilatory conduct. But Mr. Jones opposed the State's motion to set an execution date on the basis that the State brought its motion only after Mr. Jones launched his federal lawsuit – in an apparent attempt to block this litigation[2] – and, additionally, it is well known in Alabama that it could be as long as six months before the Supreme Court of Alabama will set an execution date. In these circumstances, Mr. Jones considered it prudent to agree a litigation schedule with the State that would allow him to seek full discovery and to seek expedited discovery if and when that became necessary. Mr. Jones was mindful that full discovery has been critical in successful lethal injection challenges and reasonably sought discovery on that basis until it became necessary to do otherwise. *See, e.g., Morales v. Tilton*, 465 F. Supp. 2d 972, 979 (N.D. Cal. 2006) (highlighting the importance of discovery: "the record in this case, particularly as it has been developed through discovery and the evidentiary hearing, is replete with evidence that in actual practice [the lethal injection execution protocol] does not function as intended.").

Second, the Opinion's conclusion that Mr. Jones is similarly situated to plaintiffs who have been deemed dilatory in filing § 1983 challenges because they did so on the eve of execution is legally unfounded. There is not a single citation in the Opinion to a legal precedent supporting the Court's legal analysis on dilatoriness. There is an established body of case law holding that § 1983 challenges to lethal injection were timely even when they were brought at later stages than was Plaintiff's. For example, in *Beardslee v. Woodford*, 395 F.3d 1064 (9th Cir. 2005), the plaintiff filed a § 1983 action after the Supreme Court denied his petition for a writ of

---

[2] It is perplexing that the Court would speculate (wrongly) improper motives on the part of *pro bono* counsel in litigating Mr. Jones' post conviction remedies and method of execution litigation and yet bless the State's suspect behavior in moving to set an execution date for Mr. Jones, but not for Messrs. McNair or Callahan, *after* Mr. Jones launched his lethal injection challenge. It also bears noting that there was a rare two-judge dissent in the Alabama Supreme Court when Mr. Jones moved to vacate the execution date once it was set. *See* Exhibit A to Document 30 of the docket.

certiorari with respect to habeas relief, after an execution date was set, and only one month before his execution was scheduled to take place. *Id.* at 1066-67, 1069. Nevertheless, the Ninth Circuit rejected the district court's holding that the plaintiff was subject to a strong presumption against the grant of a stay. *Id.* at 1069-70. The Ninth Circuit noted that "[o]nce an execution was imminent, Beardslee acted promptly" and "pursued his claims aggressively as soon as he viewed them as ripe." *Id.* at 1069.

In *Evans v. Saar*, 412 F. Supp. 2d 519 (D. Md. 2006), the plaintiff filed his § 1983 action ten days after an execution date was set, and just a few weeks before the execution was scheduled to take place. *Id.* at 520. Noting that the plaintiff had known the basic method of execution since 1994, the court nevertheless declined to hold the delay against the plaintiff, accepting the plaintiff's counsel's representations that "they did not file earlier because of concerns that the case was not ripe (they did not know whether they had the final protocol) and because Evans's administrative complaint had not been exhausted." *Id.* at 528.

In *Cooey v. Taft*, 430 F. Supp. 2d 702 (S.D. Ohio 2006), plaintiff-intervenor Hill moved to intervene after the Supreme Court denied his petition for certiorari and a few months before an execution date was set. *Id.* at 703-06. The Southern District of Ohio found that Hill had acted in a timely fashion, distinguishing cases in which the plaintiff had either waited until the State had moved to set an execution date or an execution date had been set. *Id.* at 705-06.

In *Nooner v. Norris*, No. 5:06-cv-00110-SWW at 5-6 (E.D. Ark. June 26, 2006), the court granted a stay of execution as to plaintiff-intervenor Davis, whose execution date had been scheduled, rejecting the State's claim that Davis had delayed pursuing his claim where "Davis moved to intervene in this case before the State set his execution date and shortly after he exhausted all means for challenging his conviction."

In *Brown v. Beck*, No. 5:06CT3018 H, 2006 WL 3914717 (E.D.N.C. Apr. 7, 2006), the plaintiff filed a § 1983 action on the same day that the Supreme Court denied certiorari on his habeas claims, prior to the setting of an execution date, but more than twenty years after he had been sentenced to death. *Id.* at *7-8. The court found that "Plaintiff's delay in filing is not so great that Plaintiff should be deprived of his only opportunity to pursue the 'serious, substantial, difficult and doubtful" questions raised in this action.'" *Id.*

Plaintiff filed his § 1983 action at an earlier point than any of the above plaintiffs, filing both before an execution date was set and before the Supreme Court denied his petition for certiorari on his habeas claims.

Finally, what is "dilatory" can be more accurately ascertained by reference to what actual practitioners really do in handling these (often *pro bono*) matters, than by guessing the motives of a single person. The overwhelming majority of counsel handing post conviction proceedings have not brought § 1983 challenges to the method of execution prior to the expiration of habeas proceedings. In fact, we are aware of only one case other than this one where the § 1983 claim was brought prior to the expiration of habeas proceedings and before an execution date was set, and in that case a laches defense was dismissed. *Nooner v. Norris*, No. 5:06-cv-00110-SWW at 6-7 (E.D. Ark. June 19, 2006). That fact reflects the collective professional judgment that an earlier filing is not appropriate. Perhaps the courts should establish a different judgment prospectively. But it is unwarranted and unfair to term Plaintiff dilatory for timing his case in the way (if not earlier) that practitioners in the field have almost universally done.

**III.  THE OPINION IMPROPERLY IGNORES MR. JONES' LIKELIHOOD OF SUCCESS ON THE MERITS AND OTHER FACTORS FAVORING A STAY**

Upon finding that Mr. Jones was dilatory, this Court makes no effort to balance any equitable presumption against a stay with the factors weighing in favor of a preliminary

injunction, including but not limited to the likelihood of success on the merits. Yet Mr. Jones made a substantial merits showing here, all of which was ignored. Any decision that purports to assess the equities has not done so where such a significant part of the equation is summarily ignored, and indeed, failure to do so cannot be reconciled with established Supreme Court precedent and is in clear error.

The Opinion implies that in *Hill*, the Supreme Court created a bright line rule that stays of execution are not available to "dilatory" plaintiffs. But it did no such thing. In *Hill*, the Court affirmed that a plaintiff must satisfy all of the requirements for a stay and, in addition, that courts must "*also* apply a 'strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay". *Hill v. McDonough*, 126 S. Ct. 2096, 2104 (2006) (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)). Similarly, in *Nelson*, the Supreme Court held that federal courts must consider "*not only* the likelihood of success on the merits and the relative harms to the parties, but *also* the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson*, 541 U.S. at 650 (emphasis added). Far from licensing lower courts to disregard all other equitable considerations upon finding that a plaintiff is dilatory, *Hill* commands that courts consider *all* equities. *See Rutherford v. McDonough*, 466 F.3d 970, 978-79 (11th Cir. 2006) (Wilson, J., dissenting) ("There was no semblance of a proper discussion or balancing of the equities of Rutherford's claim. The court [below] did not apply the appropriate standard for a stay or injunction under § 1983."). Other courts have clearly understood that such a balancing is required in the stay of execution context. *See, e.g., Taylor v. Crawford*, 445 F.3d 1095, 1098-99 (8th Cir. 2006) (recognizing the State's interest in enforcing its judgment *and* the plaintiff's interest in full and fair consideration of the merits; remanding for further proceedings);

*Beardlsee v. Woodford*, 395 F.3d 1064, 1068 (9th Cir. 2005) (noting that before a court grants a stay it must consider the likelihood of success on the merits, harm to the parties *and* the degree to which the plaintiff delayed in bring his claim; finding that district court did not abuse discretion in applying appropriate balancing tests and denying stay); *Cooey v. Taft*, 430 F.Supp. 2d 702, 708 (S.D. Ohio 2006) (considering plaintiff's likelihood of success on the merits *compared with* State's interests; granting stay); *Brown v. Beck*, No. 5:06-CT-03018-H, 2006 WL 3914717 at*2-3 (E.D.N.C. Apr. 7, 2006) (discussing need to consider merits and strong equitable presumption against stay) (conditionally denying stay).  By focusing exclusively on the fact that Mr. Jones was "dilatory in bringing this § 1983 action", this Court deviated from the standard to be applied in considering a stay of execution: the Court improperly reduced the standard for a stay to a one-factor test and failed to engage in a balancing of the equities.

**IV.   THE OPINION IGNORES THE STANDARD FOR ADJUDICATING EIGHTH AMENDMENT CHALLENGES**

The Court's holding that Plaintiff should have amended his habeas petition to challenge lethal injection in 2002 when Alabama adopted it is in clear error because it ignores the Supreme Court's "evolving standards of decency" standard of adjudicating Eighth Amendment challenges.  The reality is that in 2002, societal standards had not begun to shift against the "three-drug" lethal injection cocktail as being violative of the Eighth Amendment.

As the Supreme Court has consistently noted, "'[t]he [Eighth] Amendment must draw its meaning from the evolving stands of decency that mark the progress of a maturing society.'" *Atkins v. Virginia*, 536 U.S. 304, 311-12 (2002) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  Despite the crucial position it holds in capital punishment jurisprudence, this Court has ignored it.  The Court contends that because Mr. Jones challenged execution by electrocution in a 2000 habeas petition, he should have amended this petition to substitute lethal injection for

electrocution. *See* Opinion at 35. This analogy, however, misses an enormous distinction. In 2000, there was little doubt that society's standards had shifted away from electrocution; the same could not be said for lethal injection in 2002.

Now any prior consensus surrounding lethal injection has begun to crumble. Lethal injection has been suspended by courts in California, Delaware, Missouri and Maryland.[3] In addition, the governors of Florida[4] and Tennessee[5] have formed commissions to review their state lethal injection protocols. While challenges to lethal injection protocols have not yet reached critical mass, the age of unstinting support for lethal injection has passed and momentum is shifting rapidly. *See Atkins v. Virginia*, 536 U.S. 304, 315 (2002) (stating in observing legislative change that "[i]t is not so much the number of these States that is significant, but the consistency of the direction of change.") *Even so, it is notable that not one of these cases or executive orders representative of the changing tide came about until 2006.* It equally is notable that the constitutionality of Alabama's method of execution by lethal injection never has been assessed on the merits. Plaintiff submits that he already has shown (but the Court failed to consider) that Alabama suffers from the same, if not worse, infirmities than the states listed above. Indeed, it was in 2006 that one court observed: "[T]o date, no court has found either lethal injection in general or a specific lethal-injection protocol in particular to be unconstitutional.... At the same time, it should be noted that the record now before this Court,

---

[3] *See Morales v. Tilton*, 465 F. Supp. 2d 972, 982 (N.D. Cal. 2006) (suspending execution by lethal injection in California pending a "thorough, effective response to the issues" by the State); *Jackson v. Danberg*, No. 06-300-SLR (D. Del. May 9, 2006) (Memorandum and Order) (enjoining defendants from carrying out plaintiff's execution until further order); *Taylor v. Crawford*, No. 05-4173-CV-C-FJG, 2006 WL 1779035, at *9 (W.D. Mo. June 26, 2006) (staying all executions in Missouri pending court approval of a revised lethal injection protocol); *Evans v. Maryland*, 914 A.2d 25, 81 (Md. 2006) (enjoining execution by lethal injection in Maryland pending compliance with the Administrative Procedure Act).

[4] *See* Fla. Exec. Order No. 06-260 (Dec. 15, 2006) (suspending execution by lethal injection pending a review of the method in which lethal injection protocols are administered by the Department of Corrections to ensure that the "administration of death by lethal injection comports to the United States and Florida Constitutions").

[5] *See* Tenn. Exec. Order No. 43 (Feb. 1, 2007) (suspending execution by lethal injection pending "a comprehensive review of the manner in which death sentences are administered in Tennessee").

which includes both additional expert declarations and detailed logs from multiple executions in California, contains evidence of a kind that was not presented in these earlier cases." *Morales v. Tilton,* 415 F. Supp. 2d 1037, 1045 (N.D. Cal. 2006).

Changes in standards of decency can occur with unforeseen rapidity—especially in the context of capital punishment.  The Opinion errs in failing to acknowledge that in 2002 evolving standards of decency had not yet cast a cold eye on lethal injection and that any challenge then brought by Mr. Jones probably would have been viewed as frivolous.  Today, however, momentum has begun to shift against the current state of lethal injection executions.

## CONCLUSION

For all of the foregoing reasons, Plaintiff Aaron Lee Jones respectfully moves this Court to grant his motion to alter or amend pursuant to Rule 59(e) and to grant his motion for a stay of execution.

Date:   April 19, 2007

    /s/ Vincent R. FitzPatrick, Jr.
VINCENT R. FITZPATRICK, JR.
HEATHER K. MCDEVITT
STEPHANIE COHEN
Bar Numbers (SDNY):
VF2907; HM9973; SM7006
Counsel for Plaintiff

White & Case LLP
1155 Avenue of the Americas
New York, NY  10036
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113
vfitzpatrick@whitecase.com
hmcdevitt@whitecase.com
stephcohen@whitecase.com

**CERTIFICATE OF SERVICE**

      I certify that on April 19, 2007, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  J. Clayton Crenshaw and James W. Davis.

                    /s/ Stephanie Cohen
               STEPHANIE COHEN
               Bar Number (SDNY):
               SM7006
               Counsel for Plaintiff

               White & Case LLP
               1155 Avenue of the Americas
               New York, NY  10036
               Telephone:  (212) 819-8200
               Facsimile:  (212) 354-8113
               stephcohen@whitecase.com